1845.

WILKES
*v.*
WILKES.

---

## WILKES *v.* WILKES.

Where a written instrument of a former closed indebtedness remains in adverse hands, but no right of action or claim in equity exists upon it, this court will not require it to be given up. Equity exercises its power to cause written instruments to be delivered up only under special circumstances. A fear of suit is not enough, as testimony could be perpetuated; nor a charge of its affecting credit if shown about, where such credit is not mercantile.

---

DEMURRER TO BILL.

*Jan.* 16.
1845.

*Pleading.*
*Bill to deliver up written instrument.*
*Demurrer.*
*Jurisdiction.*

THE complainant, by his bill, showed that in the month of March one thousand eight hundred and thirty-six, he, in conjunction with Henry Wilkes, Horatio Wilkes and Peter Seton Henry, purchased of Samuel B. Schieffelin fifty-one lots of land at Manhattanville for twenty thousand four hundred dollars; and the title was conveyed to the said Horatio Wilkes, to hold one undivided third part thereof in trust for the complainant and the remaining third parts for the said Henry Wilkes, Peter Seton Henry and himself, in equal shares, subject to a mortgage of four thousand five hundred and fifty dollars previously charged upon the same, which was to be assumed by the buyers. That, of the residue of the purchase money, seven thousand six hundred and fifty dollars was secured with interest to the said Schieffelin by the bond and mortgage of the said Horatio Wilkes; that this mortgage debt was distributed so that Henry Wilkes was to pay or be charged with two

thousand five hundred and thirty-three dollars and thirty-three cents, Horatio Wilkes with one thousand nine hundred and six dollars and ninety-one cents, the said Peter Seton Henry with four thousand five hundred and thirty-three dollars and thirty-three cents and the complainant with three thousand two hundred and twenty-six dollars and forty-three cents; and, on payment of their proportions of the said mortgage debt, with interest, they were to be held entitled respectively to their several agreed proportions. That, as to the complainant's one-third of the consideration money ($6,800) he paid at the time of the purchase and by means of certain conveyances four thousand two hundred dollars, leaving a balance of two thousand six hundred dollars; but, by a private arrangement between the said Horatio Wilkes and the complainant, it was agreed that the latter should assume in addition to the two thousand six hundred dollars, the further sum of six hundred and twenty-six dollars and forty-three cents on account and as other part of the said mortgage debt, by way of making payment of this latter sum to the said Horatio Wilkes, whose portion of the mortgage debt was to be reduced accordingly; and, in this way, it was settled between them that the complainant's portion of the said mortgage debt ($2000) should be three thousand two hundred and twenty-six dollars and forty-three cents, while the portion of the said debt to be considered due from the said Horatio Wilkes on his own account ($2533 34) should be one thousand nine hundred and six dollars and ninety-one cents. It was agreed between them to pass written memorandums of the matter, which was done—the complainant giving the following to the said Horatio Wilkes : "I owe Horatio Wilkes the sum of three thousand two hundred and twenty-six dollars and forty-three cents, ($3,226 43,) with interest from the 12th March last, being on account of the purchase of one-third interest in 51 lots at Manhattanville, bought of S. B. Schieffelin." (Signed) " Charles Wilkes." That the said paper was in the possession of George Wilkes the defendant. That, at the same time, the said Horatio Wilkes signed a paper, as follows : " I hereby declare that Charles Wilkes is entitled to one-third of the 51 lots bought by

1845.

WILKES
v.
WILKES.

" me of S. B. Schieffelin at Manhattanville, on his paying the sum of $3226 43, with interest at 6 per cent. from 12th March last, being part or parcel of the mortgage now on the above named property." (Signed) " Horatio Wilkes." That those paper writings were exchanged. That the first of the said papers was not intended as a due bill in favor of Horatio, nor as an absolute evidence of debts, but was made simply to express the amount which the complainant was to contribute in the matter. That, on the eighteenth day of November one thousand eight hundred and thirty-six, the said Horatio Wilkes, by indenture of that date, conveyed to Henry Wilkes the said fifty-one lots for the expressed consideration of twenty-five thousand dollars, subject to the payment of the two aforesaid mortgages. That the said Horatio Wilkes never paid the complainant's portion of the said mortgage or any part thereof. That a principal reason for the making of such conveyance was the then insolvency of the said Horatio Wilkes. That the latter, also, made an assignment to William A. Johnson for the benefit of his creditors. That such assignee, by deed of release and for the expressed consideration of four thousand six hundred dollars, quit claimed to the said Henry Wilkes all his right, as assignee, to the said fifty-one lots. That the mortgage for four thousand five hundred and fifty dollars before mentioned (being the first mortgage charged on the said premises) was made by the said Samuel B. Schieffelin to one Effingham Schieffelin; that the second was the mortgage executed by the said Horatio Wilkes to the said Samuel B. Schieffelin and was originally ac- companied with a guarantee on the part of the said Henry Wilkes for payment thereof, the same being endorsed on the mortgage; and the said mortgage coming, by assign- ment, into the hands of one Richard L. Schieffelin and the said Horatio Wilkes failing to pay, a suit of foreclosure was commenced in which the said Henry (on the strength of his guaranty) was made a party; but the said Henry Wilkes to relieve himself for the present, arranged with the said Richard L. Schieffelin to pay off and did pay off the prior mortgage of four thousand five hundred and fifty dol- lars and it was cancelled and given up to him. But, after-

wards, a decree for sale was had by the said Richard L. Schieffelin as well against the said Henry Wilkes as others and a sale thereunder took place and the lots were struck off at one thousand two hundred and sixty dollars, leaving a large deficiency to be paid by the said Henry Wilkes, under his guarantee and which was paid by him, so that he paid the whole of the mortgages (embracing the amount mentioned in the complainant's due bill or memorandum) save what the premises were sold for. That Horatio Wilkes, in fraud, endorsed over such due bill or memorandum to the defendant George Wilkes, who now pretended to be the owner. That Horatio Wilkes died intestate; and administration was granted to the said George Wilkes. That, afterwards, an action was brought in the superior court of the city of New York by George Wilkes, as administrator, &c. on the said due bill or memorandum as an absolute evidence of debt; that the action, though at issue, had never been tried; that the matter of such due bill or memorandum was, then, fully explained to the said George Wilkes, who, thereupon, came to an arrangement with the complainant to drop the said suit entirely, provided no costs were claimed; and that all this was consummated. And the complainant averred that he acted in such arrangement under the impression and with the full belief that all controversy on the subject of the said memorandum was thereby brought to an end; and that the same was to be given up. But that the said George Wilkes now distinctly averred he intends to hold the same against the complainant for the future and to use the same as circumstances should enable him to with success; and that he pretended that, not having agreed with the complainant, in terms, for the delivery thereof, he had a right to retain possession of the said paper, to show to third parties and to make such other use of the same thereafter as, by the death of witnesses or otherwise, he might, with the hope of success. And the complainant expressly charged that it was the intention of the said George Wilkes to exhibit the said paper to the prejudice of the complainant's credit and, also, to bring another suit thereafter against him on the same, provided the death of witnesses by whom the complainant could now prove the facts of the case should,

1845.

WILKES
v.
WILKES.

1845.

WILKES
*v.*
WILKES.

at any future period, seem to him to favor his so doing. *Prayer :* That the said memorandum be delivered up ; and for further relief.

The demurrer now came up for argument.

*J. P. Hall,* for defendant in support of the demurrer.

*H. W. Warner,* contra.

*Dec.* 23.    THE VICE-CHANCELLOR :—The object of this bill is to have the memorandum or certificate given the complainant *to Horatio* Wilkes *and now held by the defendant as* his administrator delivered up to be cancelled—no other relief is asked.

It is clear, from the statements in the bill, that no right of action at law or claim in equity can exist upon this instrument in favor of Horatio or his representatives against the complainant. An action at law was once brought and discontinued ; *and it is not probable another experiment of that sort will be made.* And, yet, it by no means follows that the complainant is entitled to have the paper delivered up : for it may be important—at least of some use to the defendant to hold and be able to produce in case there should, hereafter, be an overhauling of the transaction by the complainant or a claim set up by him for an account.

*That this* court possesses a jurisdiction to cause written instruments to be delivered up is very certain. But it will be exercised only under special circumstances : See *Hamilton* v. *Cummings,* 1 J. C. R. 517.

Here, the complainant alleges his belief that the defendant intends to harrass him with another suit at law after witnesses are dead, &c.—not that the defendant has ever threatened him with another. But, to obviate this danger, the complainant can perpetuate testimony. He is apprehensive, moreover, that the defendant will injure his credit by showing this paper as an evidence of debt against him. It is only a mercantile credit that could be injured in this way ; and, yet, the bill does not allege a case of mercantile or any other credit which is liable to be injured.

The demurrer is well taken ; and must be allowed, with costs.